Good morning, Your Honors. Kenneth M. Stern for Appellant Morris Rogers. In this case, it is conclusively established that instructional error was committed in the jury, not being instructed that Mr. Rogers, to be convicted of aiding and abetting, had to share the intent to, in this case, commit acts of shooting at people with the intended assault with a deadly weapon and murder charge. As demonstrated in his briefs and as I will discuss here today, the error was clearly prejudicial, requiring this court to reverse the denial of the petition for writ of habeas corpus, thus also reversing appellant's conviction in the state court. The critical issue then becomes what relief will Mr. Rogers be entitled to? Will the government be allowed to retry him, or is the case in such a status that once the instructional error is taken into account, was there substantial evidence to convict him at all? The evidence shows there was not substantial evidence. Before you race to that issue, I suspect you might need to deal with the prejudice issue a little bit. You agree that the Brecht standard applies, right? The Brecht standard does apply, yes. And so how is your client prejudiced under that standard? Well, there are a couple of theories of law that were not applied by the state court which are really mandated by the state. Well, first of all, the Brecht standard only applies secondarily, right? First applies the regular Aetna standard as to whether the state court was reasonable with regard to its non-prejudice determination. Correct. And it was not the second time. At first they made a mistake, but the second time they corrected themselves at least to the degree of recognizing that he had been acquitted of the use of the deadly weapon. Correct. But then they made other factual mistakes and mistakes of application of Supreme Court precedent. I'm going to talk first quickly about a couple of the legal theories that were not applied that do apply, were not applied by the state court. First of all, under O'Neill v. McInnish, if there's grave doubt exists as to Mr. Rogers being properly convicted, then he's entitled to be, then it's prejudicial. Also... Well, it's actually Chapman-era in terms of this is they had to find reasonably that it was beyond a reasonable doubt not prejudicial, right? It's better than that. Well... Can we get to the core of it? Let's not talk about the standard for a while. This is my understanding. The crime that he was acquitted of, he would have been convicted of if he, not only if he had used the gun to shoot, but if he had been standing there with the gun. And the jury made a unanimous verdict that he did not use a gun, and therefore... Including didn't pull it out and brandish it. Did not use it whatsoever. That was their finding. Not that he didn't have it, though. He could have had it. Well, they found that there was no use of a weapon by him. Right. But that doesn't negate him having the gun. And there was evidence he had one, wasn't there? Yes. Well, there actually, that gets into the question of whether there was substantial evidence, or despite being substantial evidence, he's still entitled to a new trial, even if there could have been substantial evidence. Because even with substantial evidence, there is still prejudice. All right. But what would there have to be true beyond that? The jury would have found, beyond some reasonable doubt, that he had an intent to do what? Well, let me get into the facts. Mr. Gulley testified that the word to check out can mean anything. It could mean to shoot, to fight, or do anything. So that's not really evidence of an intent to shoot. And even assuming arguendo it is, it still could go both ways. It could show an intent to shoot, or it could show an intent merely to be there, or fistfight. So, therefore, a jury could have said, well, we think he was there to fistfight, or he was there to see what was going out. But that's why I asked the question I asked. What is it that he had to have been found an intent? He had to have intended that the other people he was encouraging do. He had to have been found to have the intent that somebody shooted these people. That is what the intent has to be established. And the facts simply don't establish that. A jury must have necessarily found that. Wasn't he present at a meeting with the others where they discussed having an altercation with a rival gang? Yes. And didn't one of the participants other than him at that meeting indicate that they wanted to shoot someone? No. There are a couple of witnesses. Mr. Gulley, excuse me, not Mr. Gulley, Mr. Butler and Mr. Gulley, they testified some words were spoken. But they said those words could have meant one of several things. It could have meant we want to go fight. We could want to go check things out or shoot. There's no evidence to show that appellant interpreted any of the language to say we're going to go shoot this guy. There's no evidence. There was evidence that somebody saw a gun. There's no evidence that appellant saw that gun. He could have been in the bathroom while these words were being spoken. He could have been in the bathroom when these words were. But then why doesn't it become pretty important that there was evidence that he had a gun and, in fact, pulled the gun on somebody after the initial shooting? Well, because the jury found that he didn't. No, no. They found that he didn't pull it at the shooting. But I don't know that other charges dropped, as I understand it. He did pull a gun afterwards, 15 or 20 minutes after the shooting, a different place, a different location. That doesn't mean he had a gun or did the shooting at the location. It doesn't mean it. But it's pretty likely. Well, again, could the jury have found one way or the other? The court of appeal, and I've listed in my brief, the court of appeal found that he could have been found guilty or that he was in a debate that are by mere presence. That is not the correct standard. A jury could, without being told he had the specific intent. I mean, the court of appeals really didn't deal with the fact that the crime, by being acquitted, he wasn't only acquitted of shooting, he was acquitted of pointing the gun. Well, he was acquitted of pointing it. I understand that, but I don't think the court of appeals really dealt with that. Well, it didn't deal with it very well. And, again, I've only got a few minutes. I can't go into all of the reasons the court of appeal misapplied the law or the facts, but I have explained them in my briefs. If the jury could have properly, even with substantial evidence, found him guilty, but also could have improperly, with substantial evidence, found him guilty because they didn't have that proper instructional standard, then the petition for rehearing or, excuse me, for habeas corpus has to be granted, even if there was substantial evidence to convict him. Because we don't know. We can't tell from this record or the jury's findings. We don't know whether they misapplied or not because there are sufficient facts from which the jury could have found his mere presence at the scene was sufficient to convict him without that intent instruction. Because we don't, there's no evidence that he construed any of the statements at the apartment building to mean, yes, we are definitely going to go shoot. Could have been construed, we're going to go fight, we're going to go check it out. There's no evidence to show that he saw that gun. Again, he could have been in the bathroom while this went on. There's no evidence of his intent other than some people interpreted some evidence the way they interpreted it with nothing to show how Appellant interpreted it. And while you can't take credibility into account in terms of the error here, I think in determining prejudice, I think you can. Both of these witnesses who testified against him were severely impeached, as I have explained in my brief. And I'd like to save 30 seconds, at least, for reply. Roberts. Thank you very much. We'll give you a minute when you come back up. Thank you. Mr. Cook. Good morning, Your Honors. Deputy Attorney General David Cook on behalf of Respondent Appellee. No, it is true we can't drag the Petitioner here to this courtroom and ask him point blank what was your intent. But in most cases of intent, we have to infer from the evidence around us. No, the jury does. That's the problem here. The jury was not instructed and didn't. That is true, Your Honor. And there is no dispute that the jury's instruction did not include an instruction on intent. So what we need to do is to figure out whether there was no other, essentially no other possible inference or no, beyond a doubt, no other possible inference. Yes. And I would like to clarify and correct one thing that opposing counsel was, I think, leading to, and that is the State Court's opinion is not really the pertinent document here because this case doesn't require AEDPA deferential review of the State Court decision. Under Supreme Court authority, we are here just to apply Brecht. Why is that? Pardon me? Why? Because the State Court found error and instead applied a harmless error test. Under Frey v. Plyler, this Court's review is now to simply apply Brecht, not to see whether the State Court reasonably applied a harmless error review. But this Court That's not my understanding, but it doesn't really matter if you're going to do that. Well, then let me go into the evidence then. We have evidence here of the Petitioner being at a meeting where he himself makes a statement of he wants to fight in retaliation for the killing of one of his fellow gang members. But do you agree that the intent has to be an intent to use a gun on somebody? Well, as the intent one of his one of the one of the people use a gun, the person he's aiding and abetting. Well, yes, because he was. Yes. In this case, because the conviction. He has to encourage or help somebody use a gun against somebody. Petitioner had to have knowledge of the perpetrator's criminal purpose and an intent to encourage or facilitate that criminal purpose. But not just any criminal purpose. The criminal purpose for which he was convicted. Well, yes. And in this case, the convictions were for second-degree murder and two counts of assault with a deadly weapon. And at that meeting, Petitioner himself verbalizes an intent to fight. At that meeting, one of his co-gang members displays a weapon and makes a statement saying he wants to shoot. And then a third gang member makes another statement saying he would like to fight. Now, we have more than just mere presence at the scene because at that scene, Petitioner is there in the front with other gang members behind him. He's there in the front with the two people who were found to have done the shooting. And that is not just mere presence at the scene. He's there side-by-side with the two shooters. And as Judge Hawkins pointed out, there was evidence in the record of Petitioner having a gun, even though the evidence was not found to be beyond a reasonable doubt to establish the personal use enhancement. And that evidence is found in Volume 1 of Appellant's Excerpts of Record at 25, footnote 7 of the R&R. Now, suppose with the facts of this case, he had gone to this encounter, which turned deadly, armed, understanding that his friends were going to cause some kind of trouble. But when it came to actually shooting someone, he decided not to. And given the jury's finding that he did not use, which means he not only did not fire, but that he did not brandish the weapon at that time. Is that enough? Yes, Your Honor. As to the first point, Your Honor's hypothetical establishes the first element of aiding, knowledge of the criminal purpose. Petitioner doesn't have to actually pull out his weapon and fire it to have an intent to encourage or facilitate the other gang members in their criminal purpose. Being at the scene, giving support, showing strength in numbers, that in itself, an intent to encourage or facilitate their criminal operation that he has full knowledge of, that intent can be found under that evidence. Assuming for the moment. First of all, your opponent suggested that, and I don't know the answer to this, that the record doesn't actually necessarily demonstrate that the Petitioner was at the scene when the cohorts showed the gun and said, I'm ready to get off now. So does the record show that he was actually physically present at that point? I am not that familiar with the record, Your Honor. I do know that Petitioner's own. And that's a good thing. If you're here arguing before us on a case, that's about the record. It's a pretty important point. Well, Your Honor, I believe the record. I believe, well, I don't have the RT in front of me, but I do believe that the record shows that he was there. If I'm wrong on that, then I'm wrong. But I do believe that it shows he was at the meeting. Petitioner's only defense in regard to the evidence. All right. Then I have two other questions, okay? What he actually said, he displayed a gun. That's fairly telling. And then he says, I'm ready to get off now. And your brief says that Gulley said that he interpreted the statement to mean that he wanted to blast or shoot. But he didn't say, that's what it means in our lingo. And if I heard, I'm ready to get off now, it doesn't sound to me that means I'm going to shoot somebody. So I don't know exactly why it means that. Well, I don't – well, if I may, Your Honor, I don't believe Petitioner testified at trial. So it's not Petitioner ever offered his own interpretation of these statements. It was the witnesses who testified as to the statements provided their own interpretation of what this means, none of which seems to have been refuted in the record or pointed out by opposing counsel in this hearing or anywhere else. But none of those – you had a witness who recounted the statement about I want to get off, correct? I'm sorry, Your Honor? There was a witness on behalf of the State who described the making of the statement I want to get off.  Correct?  Did that person supply a definition for what that meant? It was believed – that statement was believed to mean that Smith, the gang member who displayed the gun and made the statement, wanted to shoot someone. That's what the witness said? Yes. All right. My last question is, what does somebody have to do to, aside from have an intent to aid him in bed? In this instance, he had to encourage or aid him in some way. So what did he do that encouraged or aided him, assuming that he knew that they were going to go off and shoot somebody? He went with them. He went with them. And is that enough that he went with them? Well, with all due respect, Your Honor, the aiding aspect of the instruction is not any – there was no error as to the aiding aspect of the instruction. So your question pertains to something that the jury was instructed upon and found to be true. He did aid. He was there. There's no dispute about that. The only issue here is the intent aspect of aiding. The question is, what does one have to do to aid in a bed? Is simply hanging around a felony enough? Well, hanging – to quote, unquote, hang around a felony, Your Honor, is a very vague concept. In this particular case, however – Is being present at the scene where two people shoot and someone dies enough to establish aiding and abetting? Well, if he's – if you put Petitioner in the position where he is at the time the fact that Petitioner was at this meeting where these statements – one of – one statement of which was Petitioner's own statement that was made, that the purpose was to retaliate for the death of one of their fellow gang members. If you add to it the evidence that Petitioner is with one of the actual shooters fleeing the crime together, and if you add to it the fact that there's no evidence whatsoever of Petitioner ever displaying or conducting himself in a way contrary to an intent to go to that violent confrontation where there's going to be gunfire and shoot. But that's the question. I mean, the real core of this is, does he have to aid and abet the shooting as opposed to the altercation or the fight or the battery or – does he – what does his aiding and abetting, both functionally and with regards to intent, have to go to the fact – the use of the deadly weapon and the murder, or is it a foreseeable standard or what is it? That's what I'm trying to get at. Suppose he thought they were going to – he clearly aided and abetting him going there and retaliating and having a fight, right? No doubt about it. But the question, both with regard to intent and the actual activating and abetting, is whether – how we close the gap to the gun and the murder. Well, Your Honor, I don't believe that you can close – I don't believe that a blind eye can be turned to the evidence of what happened at that meeting.  Because it shows that he went from the meeting to the confrontation with these people. He's there when the shots are fired. Sounds like what you're saying is that his presence at the meeting with the discussions that occurred, including someone who displayed a weapon and evidenced an intent to hurt someone and went to the scene of a confrontation, is enough, irrespective of whether he ever displayed the firearm, said something to encourage the other two to shoot or anything else. Is that correct? Well, yes, Your Honor, but he did – he was more than just merely at the scene. And what does the record tell us that he did at the scene? The record says that he's – that if I run out of time, Your Honor, if I may answer the question. You have plenty of time to answer the question. Thank you, Your Honor. They go from the meeting to the auto yard where the shooting occurs. The assorted members of Petitioner's gang split into two groups. There were Smith, Petitioner, and I believe Gulley, or a third shooter, in the front. The rest of the gang members were behind. The question is, what did Mr. Rogers do at the scene? He separated himself from those who were behind and stood with the shooters. Okay. What else? There is evidence in the record that – and although this evidence was not focused upon by the district court, there is evidence that Petitioner was armed and then following the shooting, Petitioner left with one of the shooters and never made any attempt to break away from him and their attempt to escape. Okay. All right. Thank you, Your Honor. Thank you for your argument. Rebuttal? Yes, Your Honor. We'll put a full minute on the clock. Thank you. First of all, with regard to the appellant having a gun, I double-checked my notes. I see nothing to show he had a gun prior to the shooting by either Mr. Butler or by Mr. Gulley. All right. The court of appeals opinions, I think, says as an Archie site that Petitioner was present when Smith made the statement. Do you say that wasn't necessarily so at the meeting? I don't. I see no evidence of it. Well, here's what the court did, and this is what counsel did. He was at the premises, at the apartment, while everybody was getting together and talking. There's no showing that he was actually present when those statements were made or when the gun shot. As I said, he could have been in the bathroom, could have stepped outside for a breath of fresh air. He was generally there. There's nothing to show he was specifically there at the time that the statements were made or the gun was shot. There was evidence that he was at the meeting. Right. Is there any evidence to suggest that he was out of the meeting for a moment? I mean, basically, you're asking us to hypothesize that he might have stepped out at the critical moment. But is there anything other than speculations for that? There's no evidence one way or the other, Your Honor. And the point is that there is. Well, no, there is. There is evidence he's at the meeting. Right. If you're at a meeting, you're ordinarily at a meeting unless there's something that suggests you weren't there. Now, people can walk out, but there could be testimony as to him walking out, too. The witness who said he was there at the meeting could have been asked, did he step out? So what I hear is that he's at the meeting, and we can speculate that he stepped out, but no evidence that he stepped out. And but there's no testimony that even if he was there, that he heard those statements or he interpreted them the way Mr. Butler interpreted them or the way Mr. Gulley interpreted them. And what the problem in terms of prejudice that creates is a jury. That leaves the jury the ability to either make a proper finding of guilt. Well, was this home meeting outside, not inside? It was in an apartment or outside? It was an apartment. In an apartment? Yeah, an apartment. Well, looking at the evidence about I'm going to get off now, he says it was outside. It was in front of the duplex. Okay. Well, but it was all in or about the apartment. But the reason it's prejudicial is even with that, a jury could have rejected that and found mere presence, because, again, there's no definitive statement here that is shown to have been understood by Appellant that a shooting was going to take place and he was going to go help that shooting. Well, Appellant didn't confess. Appellant didn't testify. No, but the problem is. So it's impossible for there to be evidence with regard to what Appellant understood. But the status of the evidence as presented by the prosecution would have allowed  to be made by the jury.    The court is not free to judge a case.  It's not free to judge a case. Okay. But the question is, is it possible that Appellant, without proper instruction, without the intent to. . . And it wasn't. . . From what I can tell, I'm looking at the record now. I can't tell what the nicknames are. What was the nickname of your client? It was Krabs, Cruge, and Donut. Which one was he? It was one of them? I don't recall his nickname. All right. Anyway, this guy, Gulley, testifies, as I read it, that after they had the meeting, it wasn't actually at the meeting, that after they left to go do whatever they were going to do, and they were outside the duplex, he says he sees Scrooge with the gun and he takes it out and says, I'm ready to get off now. And then he says. . . But he also said that he saw Scrooge, Krabs, and Donut, and I'm assuming that one of them is your client, pull out the guns, and obviously the jury didn't believe that because if they believed that your client pulled out the gun, then they would have convicted him. Correct, and, Your Honor, that raises an important issue. Neither Mr. . . . A jury could have well found Mr. Gulley and Mr. Butler to be not credible witnesses. They did find them not to be credible witnesses. Yes, but what I'm saying is to the extent they testified as to Mr. Rogers' involvement, again, it raises grave doubt as to whether or not the jury properly convicted an appellant based upon finding a specific intent to do the shooting. The jury didn't find these gentlemen credible, and therefore I think this Court, at least in analyzing prejudice, has to look at the point, well, if the jury didn't find them credible in many respects, then perhaps they were just taking the only things they could find them credible on, and those only items where there was really no dispute would not involve any of my client's intent. I think we understand your argument. You're substantially over your time. Thank you, Your Honor. We appreciate you coming in today. Thank you both. The case just argued will be submitted for decision.
judges: Hawkins, Berzon, Clifton